CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
NOV 20 2007
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MARK KEVIN MAYES,<br>Petitioner, | )<br>)<br>) |
| v. | ) Case No. 7:07cv00132<br>) |
| UNITED STATES OF AMERICA,<br>Respondent. | ) By: Hon. Michael F. Urbanski<br>) United States Magistrate Judge |

## REPORT AND RECOMMENDATION

Petitioner Mark Kevin Mayes ("Mayes") brings this action under 28 U.S.C. § 2255, alleging that counsel provided ineffective assistance during Mayes' criminal proceeding by (1) failing to advise him that the government could reveal Mayes' criminal history to the jury in order to mar his credibility and that the government could seek an enhancement for obstruction of justice if he committed perjury while testifying; and (2) failing to explain that a plea agreement could be reached and that there could be a reduction in offense level for a timely plea agreement. By Memorandum Opinion and Order entered July 20, 2007, the court found that it was unable to resolve the issue of whether counsel was ineffective and, therefore, ordered an evidentiary hearing on the same.[1] By Order dated July 20, 2007, the court referred all dispositive matters to the undersigned Magistrate Judge to submit proposed findings of fact and a recommended disposition and designated him to preside over any necessary evidentiary hearings. An evidentiary hearing was conducted on October 2, 2007, and both parties have briefed the issue.

Based on the evidentiary hearing testimony and the briefs submitted by the parties, the undersigned concludes that Mayes has not met his burden of proving counsel's alleged errors

---

[1] The court dismissed all of Mayes' other claims in that same Memorandum Opinion and Order.

resulted in constitutional prejudice to him. Therefore, the undersigned recommends that respondent's motion to dismiss be granted and Mayes' petition for relief be dismissed.

## I.

On November 14, 2002, a federal grand jury charged Mayes with knowingly possessing a firearm after having been previously convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Count One); possession with the intent to distribute a mixture or substance containing a measurable quantity of methamphetamine, and 5 grams or more of methamphetamine, in violation of 21 U.S.C. § 841 (Count Two); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count Three).

The evidence produced at Mayes' jury trial established that on September 4, 2002, at 2:22 A.M., a valid search warrant was issued authorizing officers to search the residence of Joel Hamm on Cherry Creek Road in the Meadows of Dan community. The warrant also authorized the officers to search "all persons, vehicles, outbuildings and curtiledge [sic]" of the residence. (Resp't Ex. A, Appellate J. A. 14.) Hamm was not at home at the time that the search warrant was executed, but the officers had been informed that he often drove a red, Ford F-150 pickup truck. When a vehicle matching that description entered the driveway leading to the residence, officers attempted to stop the vehicle and make contact with the occupants. The occupants briefly attempted to flee the scene but were stopped immediately. Mayes was the passenger in this vehicle and made a statement to the officers to the effect that everything in the truck belonged to him. Subsequently, a revolver was found next to the console on Mayes' side of the

2

vehicle and a Crown Royal bag containing 33.3 grams of methamphetamine[2] was found next to the gun. Mayes stated that the gun belonged to him and that he used it to shoot snakes. He also commented that he was so startled by the officers that he almost shot one of them. Cash in the amount of $721.00 and an empty pen tube consistent with personal drug use was also found on Mayes' person.

On November 27, 2002, Terry N. Grimes, Esq. ("Grimes") was appointed to represent Mayes. A jury trial was held on April 29, 2003. At trial, the government presented evidence regarding the vehicle stop and search as well as testimony regarding the customs of methamphetamine dealers. Mayes testified on his own behalf at trial and denied any knowledge of the firearm being in the vehicle, stating that the gun belonged to Allen Hamm.[3] Mayes testified that he was intoxicated on the night of his arrest and was, therefore, unable to remember anything that he told the officers that night. Mayes admitted to being a user of methamphetamine and agreed that 33.3 grams would be far more than he would need as a user. He denied any knowledge of the drugs found in the vehicle, however. The jury convicted Mayes of all charges.

On August 4, 2003, the court conducted a sentencing hearing. Based on the amount of drugs at issue, Mayes' base offense level was determined to be 26. The Presentence Report ("PSR") recommended a two-level enhancement, pursuant to the United States Sentencing Commission, Guidelines Manual, § 3C1.1 (2005) ("U.S.S.G."), for obstruction of justice based on a finding that Mayes gave willful, false testimony relating to a material matter when he

---

[2] The 33.3 grams of methamphetamine had a purity level of only 23%, resulting in 7.6 grams of actual methamphetamine.

[3] Hamm denied ownership of the gun on cross-examination and testified that the gun belonged to Mayes.

3

testified at trial that he had no knowledge of the gun and the drugs in the vehicle and when he denied being a seller of methamphetamine.[4] Accordingly, the PSR determined that, based on Mayes' adjusted offense level of 28 and his criminal history category of VI, his Sentencing Guidelines range was 140 to 175 months for Counts One and Two, and 60 months mandatory consecutive imprisonment for Count Three. The court ultimately sentenced Mayes to concurrent sentences of 160 months for Counts One and Two and a consecutive 60 month term for Count Three, for a total of 220 months.

On July 12, 2004, the Court of Appeals for the Fourth Circuit affirmed Mayes' conviction and sentence. See United States v. Mayes, 103 F. App'x 495 (4th Cir. 2004) (unpublished). The Supreme Court of the United States thereafter granted Mayes' petition for certiorari, vacated the Fourth Circuit's opinion, and remanded the case for further proceedings in light of United States v. Booker, 543 U.S. 220 (2005). On remand, the Fourth Circuit again rejected Mayes' challenge to the enhancement for obstruction. The court concluded that the application of the obstruction enhancement "was not Booker error, because the jury 'necessarily, albeit implicitly, found that he had engaged in behavior that fits within § 3C1.1.'" United States v. Mayes, 178 F. App'x 331, 333 (4th Cir. 2006) (unpublished). Furthermore, the court found that "even if the enhancement constituted Booker error, we would decline to notice the error because there can be no question that the jury, having found that the offenses were committed,

---

[4] Section 3C1.1 provides in pertinent part that a district court should increase a defendant's offense level by two points if the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the prosecution of the instant offense of conviction and the obstructive conduct related to the defendant's offense of conviction. "This enhancement applies to a defendant who commits perjury during the course of his or her prosecution, [and] . . . is appropriate if the sentencing court finds that 'the defendant when testifying under oath (1) gave false testimony; (2) concerning a material matter; (3) with the willful intent to deceive (rather than as a result of confusion, mistake, or faulty memory).'" United States v. Quinn, 359 F.3d 666, 681 (4th Cir. 2004) (citation omitted).

4

would also have determined that Mayes willfully and falsely testified about a material matter." Id. at 334.

Mayes then filed this § 2255 motion on March 19, 2007, claiming that his counsel provided ineffective assistance by failing to properly advise him about the possible adverse consequences of testifying at trial and that counsel failed to explain that a plea agreement could be reached. On July 20, 2007, the court entered a Memorandum Opinion and Order ordering an evidentiary hearing on the issue of whether Mayes' counsel provided ineffective assistance. An evidentiary hearing was held on October 2, 2007. See Docket No. 16.

## II.

Mayes testified at the evidentiary hearing that Grimes informed him that the government would attempt to give him a life sentence. Mayes contended that he was under the impression that he was facing a life sentence whether or not he pleaded guilty or proceeded to trial. Accordingly, Mayes alleged that he felt as if his only real choice was to take his chances at a jury trial and hope to avoid a life sentence. He also testified that he repeatedly informed Grimes that he would take a plea agreement resulting in a term of imprisonment of not more than five years. However, he stated at the evidentiary hearing that he would have accepted a plea agreement resulting in 92-115 months for Counts One and Two and 60 months for Count Three, precisely the terms of the government's proffered plea agreement, if it had been properly presented to him.

Mayes presented correspondence between Grimes and himself as evidence at the evidentiary hearing. He presented a letter from Grimes to Mayes dated December 6, 2002, that set forth the charges and explained the mandatory minimum sentences for each charge. It also informed Mayes that the United States was seeking "to increase [his] punishment based upon

5

a previous felony drug conviction in 1994." (Pet'r Ex. 1.) On cross-examination, the United States presented a letter from Mayes to Grimes dated December 13, 2002, responding to the letter of December 6, 2002. Mayes stated in that letter that he wanted "to fight [the] matter," and that the confiscated gun and the drugs did not belong to him. (Resp't Ex. 1.) The United States also presented a response letter from Grimes to Mayes dated December 20, 2002. Grimes stated in that letter that he was responding in writing to Mayes' December 13, 2002 letter even though they had recently verbally reviewed the issues raised by Mayes at the Roanoke City Jail. The letter stated that Mayes' statements concerning the gun and drugs were inconsistent with the discovery information provided by the United States. Grimes informed Mayes that the evidence would most likely be sufficient to support a conviction of all three charges. Grimes agreed to file a motion to suppress the confiscated evidence, but speculated that the motion would be unsuccessful. Mayes admitted at the evidentiary hearing that Grimes participated in a lengthy suppression hearing concerning the confiscated gun and drugs.

Mayes also presented a letter from Grimes to Mayes dated February 5, 2003, that informed Mayes of the terms of a plea agreement offered by the United States. The letter indicated that, under the terms of the plea offer, Mayes faced a sentence of a period of incarceration not less than 25 years (15 years as to Count One and 5 years each as to Counts Two and Three).[5] Grimes also warned Mayes that the actual sentence could be enhanced if the court determined that Mayes qualified as an armed career criminal or a career offender. Grimes informed Mayes that the plea offer provided for a withdrawal of the second offense enhancement, credit for acceptance of responsibility, and the opportunity to provide substantial

---

[5] Mayes contends that his actual exposure pursuant to the plea agreement was 152 to 175 months.

assistance. Mayes next presented a letter from Grimes to Mayes dated March 13, 2002,[6] that explained 18 U.S.C. § 924(e), the armed career criminal statute. At the evidentiary hearing, Mayes drew particular attention to the sentence stating, "I do not know your complete criminal history, but you, of course, should have that information."[7] (Pet'r Ex. 4.) This letter also informed Mayes that, during a conversation with Grimes the previous day, the United States indicated that it would not agree to a sentence of five years.

Mayes contended at the evidentiary hearing that Grimes never explained to him that the government would not agree to a plea agreement calling for a term of imprisonment of five years. He said that he was under the impression that the government was not willing to offer him anything. He claimed that Grimes never discussed Mayes' request for a five-year term of imprisonment with him, nor did he advise Mayes that such a request was unreasonable. He stated that Grimes never explained the concept of constructive possession and that if he knew that "he was fighting a losing case," he would not have gone to trial. Mayes continued that Grimes did not discuss the Sentencing Guidelines with him, nor did he discuss the possible effects of Mayes' previous criminal convictions with him. In particular, Grimes failed to provide Mayes with a comparison between the penalties associated with a plea agreement and the penalties associated with a conviction after a jury trial. Mayes further claimed that his reading and writing skills were "real bad" and that he had no specific recollection of the contents of any of the letters sent by Grimes.

---

[6] Mayes notes that this letter was sent after the period within which to accept the plea agreement had already expired.

[7] Grimes admitted at the evidentiary hearing that he did not research the North Carolina or Texas code violations under which Mayes had been convicted to see if they qualified as serious drug offenses and that he incorrectly assumed that Mayes was an armed career criminal.

7

Case 7:07-cv-00132-JLK-mfu   Document 22   Filed 11/20/07   Page 7 of 19   Pageid#: 184

Finally, Mayes claimed that Grimes did not advise Mayes that he should refrain from testifying even though Grimes was aware that Hamm's testimony would conflict Mayes' testimony and that Mayes' felony conviction could be used to mar Mayes' credibility. Mayes admitted that he was in the courtroom when Hamm testified and that he listened to Hamm's contradictory testimony prior to Mayes' decision to testify. Mayes contended that Grimes never explained that his sentence could be increased if the court determined that he committed perjury. When questioned by the government as to whether or not Mayes was telling the truth at trial, Mayes gave only evasive and non-conclusory answers.

### III.

At the evidentiary hearing, Grimes testified that he met with Mayes on several occasions to discuss the charges and his client's views on relevant issues. (Grimes Tr. at 6.) He claimed that at a December 3, 2002 meeting with Mayes, he reviewed the Sentencing Guidelines with Mayes and attempted to estimate his exposure. (Grimes Tr. at 9, 10.) Grimes contended that he verbally advised Mayes of the statutory minimums and felt certain that he would have answered any of Mayes' questions concerning the Sentencing Guidelines. (Grimes Tr. at 7.) Grimes admitted that his December 6, 2002 letter incorrectly assessed the Sentencing Guidelines as to the mandatory minimum of Count One, by determining that Mayes was subject to fifteen years incarceration. (Grimes Tr. at 9, 38.) He further admitted that he informed Mayes that the government would "go[] for whatever it could get," in the context of a period of incarceration. (Grimes Tr. at 10.)

Grimes contended that he explained actual, constructive, and joint possession to Mayes, but that Mayes still maintained that the gun did not belong to him. (Grimes Tr. at 6, 11.) Mayes "profess[ed] . . . innocence" throughout the proceedings and "took a very hard position" on the

8

issue. (Grimes Tr. at 49, 55, 56.)  Grimes testified that he assessed the strength of Mayes' case in light of discovery in the December 20, 2002 letter and determined that Mayes' statements were inconsistent with the government's discovery and that the evidence would most likely be sufficient to support a conviction. (Grimes Tr. at 12, 13.) Grimes contends that he also verbally advised Mayes that there would be a "high likelihood of conviction" based on the government's evidence. (Grimes Tr. at 23.)

Grimes further testified that he sent a letter dated February 5, 2003, advising Mayes of the government's plea offer and the possible benefits of accepting the offer. (Grimes Tr. at 14.) Mayes never responded. (Grimes Tr. at 53.) Grimes contended that he also verbally discussed the pros and cons of accepting the plea agreement with Mayes, but that Mayes never indicated that he would agree to a term of imprisonment longer than five years. (Grimes Tr. at 11, 18.) Grimes admitted that he did not re-approach the United States and attempt to negotiate the plea agreement further partially based on his client's unwillingness to negotiate and partially because, in his view, the offer was a "take-it-or-leave-it" offer. (Grimes Tr. at 27, 35, 53.) Grimes admitted on cross-examination that he failed to compare with Mayes the guideline consequences of a plea agreement as opposed to a guilty verdict subsequent to a jury trial. (Grimes Tr. at 47.)

Grimes also presented notes from a March 12, 2003 meeting with Mayes. In pertinent part, the notes stated, "defendant wants to go to trial" because there are no prints on the gun and the drugs were not physically on his person, but "he would take 5 years." (Government Ex. 3.) Grimes testified at the hearing that Mayes indicated that he would accept a plea agreement resulting in a term of imprisonment of five years, but that he never indicated that he would be interested in a plea agreement concerning seven, eight, ten, or fifteen years. (Grimes Tr. at 16, 27.) Accordingly, Grimes pursued the five-year option with the United States, but contended

9

that the terms were rejected. (Grimes Tr. at 17.) Grimes then stated that Mayes requested that he prepare for trial. (Grimes Tr. at 18, 25, 49, 51.) Grimes admitted that he could not recall advising Mayes that a term of imprisonment of five years was unreasonable based on the charges. (Grimes Tr. at 17, 18, 28, 52, 54.) Grimes testified that it was ultimately Mayes' decision to proceed to trial and that Mayes was adamant that the case proceed to trial. (Grimes Tr. at 14, 55.) Grimes further claimed that Mayes never informed him that Hamm's testimony was different than his. (Grimes Tr. at 19.) Grimes contended that he generally informs clients that they must testify truthfully and that he explains the consequences of committing perjury. (Grimes Tr. at 20.)

In his post-hearing brief, Mayes contends that counsel provided ineffective assistance by failing to accurately convey the government's plea offer; by giving inaccurate and incomplete advice regarding Mayes' sentence exposure; by failing to assist Mayes in deciding whether to accept the plea offer; and by failing to make any effort to persuade Mayes to reconsider his decision to go to trial.

## IV.

Mayes' contention that counsel provided inaccurate and incomplete advice and failed to accurately convey the government's plea offer, while not entirely without merit, fails to rise to the level of a constitutional violation. Grimes advised Mayes that, under the government's proposed plea agreement, Mayes would be facing "not less than 25 years" and, depending on whether Mayes was an armed career criminal or career offender, "up to 360 months to life, assuming no acceptance of responsibility." (Pet'r Ex. 3.) Mayes complains that Grimes clarified Mayes' possible exposure as a career criminal in a letter dated after the time for acceptance of the plea offer had passed. Mayes further contends that Grimes failed to actually assess whether

10

Mayes' previous convictions resulted in an armed career criminal or career offender status and never addressed what effect, if any, this would have on his estimate of Mayes' exposure under the remaining Counts. Finally, Mayes points out that Grimes incorrectly relayed the terms of the plea agreement as the agreement actually reduced his exposure to a range of 12 years and 8 months to 14 years and 7 months, not 25 years or 30 years to life. Mayes claims that, had he been provided with accurate information concerning the plea agreement, he would have accepted the offer.

Criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To prevail on an ineffective assistance of counsel claim, a habeas corpus petitioner must satisfy the two-pronged test set forth in Strickland. First, a petitioner must show "that counsel's performance was deficient," meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Second, a petitioner must show "that the deficient performance prejudiced the defense" to the extent that he was deprived of a fair trial. Id. Generally, the prejudice prong requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Strickland establishes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

While a claim of ineffective assistance of counsel may lie where counsel provides erroneous advice during the plea negotiation process, United States v. Brannon, 48 Fed. App'x 51, 53 (4th Cir. 2002), or fails to accurately convey the terms of a plea offer,[8,9] Nunes v.

---

[8] It is important to note that this is not a case where defense counsel wholly failed to convey a plea offer to
(continued...)

Mueller, 350 F.3d 1045, 1056 (9th Cir. 2003), to succeed on a claim of ineffective assistance arising from plea negotiations, Mayes must show that he would have accepted the government's plea offer had his attorney advised him correctly about his sentencing exposure. Brannon, 48 Fed. App'x at 53; United States v. Gaviria, 116 F.3d 1498, 1514 (D.C. Cir. 1997). Mayes need only demonstrate sufficient evidence for a reasonable fact finder to conclude with "reasonable probability" that he would have accepted the plea offer, a probability "sufficient to undermine the result." Nunes, 350 F.3d at 1054 (quoting Strickland, 466 U.S. at 694).

Familiarity with the structure and basic content of the Sentencing Guidelines has become a necessity for counsel who seek to give effective representation. See United States v. Murray, 176 F.3d 476 (Table) (4th Cir. 1999) (quoting United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992)). The court in United States v. McCoy, 215 F.3d 102 (D.C. Cir. 2000), determined that the performance of the defendant's counsel was deficient where counsel failed correctly to apply the career offender provisions of the Sentencing Guidelines when determining the sentencing

---

[8](...continued)
a criminal defendant. See United States v. Blaylock, 20 F.3d 1458 (9th Cir. 1994) (finding that counsel's failure to communicate a plea offer to defendant satisfied the first part of the Strickland test). There is no question that Grimes informed Mayes of the government's plea agreement, both verbally and by written communication.

[9] To the extent that Mayes claims that Grimes was ineffective for failing to re-approach the government and attempt to negotiate a more favorable plea agreement, this argument is without merit. There is no affirmative duty under the Constitution to solicit plea bargain offers from prosecutors, much less negotiate an offered plea agreement. See United States v. Usma, No. 97CV3135, 1997 WL 458431 (N.D. Ill. July 29, 1997) (finding no authority to suggest that an affirmative duty to solicit plea bargains exists); see also Beans v. Black, 757 F.2d 933, 936-37 (8th Cir. 1985) (holding that defense counsel has no duty to initiate plea bargaining, though failure to do so in a particular case might be unreasonable). Furthermore, Grimes' decision not to re-negotiate could be considered reasonable trial strategy as his client consistently professed his innocence and he was under the impression that the government's offer was "take-it-or-leave-it." See Brown v. Doe, 2 F.3d 1236, 1246 (2d Cir. 1993) (holding that an attorney's decision not to initiate plea bargaining could be considered reasonable strategy, and stating that "it is not necessary that the defendant have counsel who recommends that a plea bargain be pursued"). Finally, the Constitution does not afford Mayes the right to a plea bargain. Weatherford v. Bursey, 429 U.S. 545, 561 (1977); United States v. Rivers, 226 Fed. App'x 292 (4th Cir. 2007) (citing Santobello v. New York, 404 U.S. 257, 262 (1971) (finding that a defendant has no constitutional right to plead guilty)). Further, the letters exchanged between Grimes and Mayes make it clear that Grimes pursued Mayes' five-year position with the government, but that the government rejected this deal.

range the defendant would face if he accepted the Government's plea agreement. The McCoy court relied on United States v. Gaviria, 116 F.3d 1498, 1513 (D.C. Cir. 1997), where one defendant had refused to plead guilty to the charge of conspiracy to distribute narcotics because his counsel had informed him that he would be treated as a career offender under the Guidelines and be subject to a sentence of 360 months to life in prison. Almost a year earlier, however, the Court of Appeals for the District of Columbia held in United States v. Price, 990 F.2d 1367, 1370 (D.C. Cir. 1993), that a conspiracy conviction did not count as a predicate crime for purposes of the career offender provisions of the Guidelines. Because the defendant's counsel failed to realize that Price precluded treating the defendant as a career offender, the Gaviria court held that counsel's performance was constitutionally deficient. The McCoy court determined that the mistake McCoy's counsel made was even more egregious than that made in Gaviria as, instead of failing to find and apply a case interpreting the Guidelines, McCoy's counsel failed to follow the formula specified on the face of the Guidelines.[10]

---

[10] Compare Hill v. Lockhart, 474 U.S. 52, 62 (1985) (White, J., concurring) (quoting Strickland, 466 U.S. at 690) ("The failure of an attorney to inform his client of the relevant law clearly satisfies the first prong of the Strickland analysis . . . as such an omission cannot be said to fall within 'the wide range of professionally competent assistance' demanded by the Sixth Amendment,")); Moore v. Bryant, 348 F.3d 238, 242-43 (7th Cir. 2003) (finding that attorney's miscalculation where the attorney told his client that he would face 10 years' imprisonment if he pleaded guilty, but as much as 27 years if he lost at trial but, in actuality, the defendant would have only faced 12-1/2 to 15 years if found guilty at trial, was "precisely the type of information that is likely to impact a plea decision"); Paters v. United States, 159 F.3d 1043, 1047-48 (7th Cir. 1998) (holding that when appellant alleged that his attorney gave him erroneous advice during plea negotiations regarding the maximum sentence if he proceeded to trial, a hearing was warranted in district court to determine if defendant would have accepted the plea); United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992) (stating that "knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty"); Wellnitz v. Page, 420 F.2d 935, 936 (10th Cir. 1970) (per curiam) (holding that the gross mischaracterization of the likely outcome presented in this case, combined with the erroneous advice on the possible effects of going to trial, falls below the level of competence required of defense attorneys); Wanatee v. Ault, 39 F. Supp. 2d 1164 (N.D. Iowa 1999), aff'd, 259 F.3d 700, 703 (8th Cir. 2001) (counsel is "deficient" for purposes of an "ineffective assistance" claim if counsel does not adequately advise the defendant of the law applicable to his circumstances, including plea and trial alternatives) with United States v. Martinez, 169 F.3d 1049, 1053 (7th Cir. 1999) (finding that an attorney's "mere inaccurate prediction of a sentence" does not demonstrate the deficiency component of an ineffective assistance of counsel claim); Gargano v. United States, 852 F.2d 886, 889 (7th Cir. 1988) (finding no ineffective assistance where counsel incorrectly advised defendant that, if convicted as an armed career criminal, he could have received up to life in prison); Iaea v.

(continued...)

While it appears that trial counsel was grossly inaccurate in his calculation of Mayes' possible sentence exposure under the plea agreement and failed to assess Mayes' options in other instances, the undersigned finds that Mayes' claim that he would have pleaded guilty is not credible. The undersigned is not persuaded that there is a reasonable probability that Mayes would have accepted the government's plea offer. Even after Grimes informed Mayes, both verbally and in writing, of the high likelihood of his conviction at trial, Mayes still refused to reconsider his inflexible position of a five-year term of imprisonment and directed Grimes to prepare for trial. Moreover, Mayes' lack of communication with Grimes supports the determination that Mayes was not interested in discussing plea agreement options. Grimes sent Mayes a letter on March 13, 2003, prior to trial, correcting his prior sentencing guideline errors and requesting that Mayes contact him if Mayes changed his mind as to the possibility of a guilty plea. Mayes did not respond to Grimes' letter or attempt to contact Grimes to discuss or clarify the offered plea agreement terms or to request that Grimes begin a negotiation process. Furthermore, Mayes professed his innocence to Grimes throughout the entire proceeding. In fact, the only correspondence from Mayes presented into evidence indicates his desire to "fight [the] matter" and maintains his innocence of the charges. See United States v. Brannon, 48 Fed. App'x 51, 53 (4th Cir. 2002) (citing Engelen v. United States, 68 F.3d 238, 241 (8th Cir. 1995) (holding defendant could not show prejudice arising out of misadvice of defense attorney when

---

[10](...continued)
Sunn, 800 F.2d 861, 865 (9th Cir. 1986) (citing McMann v. Richardson, 397 U.S. 759, 770 (1970) (finding that "a mere inaccurate prediction, standing alone, would not constitute ineffective assistance" of counsel)); United States v. Young, No. CR02-0035, 2005 WL 1532609, at *12 (N.D. Iowa June 28, 2005) (finding that petitioner's claim that counsel gave erroneous advice regarding his potential sentence, which left him unable to make an intelligent choice as to whether or not to plead guilty, merely complains of nothing more than critiques of strategic decisions counsel made during his representation); United States v. Reyes, No. 98CR301-01, 1999 WL 239099, at *4 n. 12 (E.D. Pa. March 26, 1999) (rejecting defendant's ineffective assistance of counsel claim because "it is impossible to know, or even predict whether a defendant will be sentenced as a career offender").

14

there was no showing defendant would have accepted offer)); Gallo-Vasquez v. United States, 402 F.3d 793, 798-99 (7th Cir. 2005) (finding no prejudice (i.e., a reasonably probability that, but for counsel's advice, petitioner would have accepted a plea agreement) where defendant rejected a plea offer and continually asserted his innocence); Humphress v. United States, 398 F.3d 855, 859 (6th Cir. 2005), cert. denied, 546 U.S. 885 (2005) (finding that defendant's continued assertion of innocence supported the conclusion that he would not have entered into a plea agreement). Finally, the undersigned finds Mayes' testimony to be not credible due to his evasive answers and feigned ignorance of the strength of the government's case at the evidentiary hearing. Grimes clearly explained to Mayes in writing, and also verbally, that the government's evidence would most likely be sufficient to secure a conviction at trial. Also, Mayes obviously testified falsely under oath on another occasion, his trial. Furthermore, Mayes informed the court in his 2255 petition that counsel simply never explained that a plea agreement could be reached and that there could be a reduction in offense level for a timely plea agreement. The evidence undeniably indicates to the contrary.

Even if the court were to determine that counsel's actions fell below an objective standard of reasonableness, none of counsel's alleged errors resulted in constitutional prejudice to Mayes. Based on the record evidence, the undersigned finds that there is no reasonable probability that Mayes would have accepted the government's plea offer. Because Mayes has failed to make a sufficient showing with respect to the prejudice prong of the Strickland standard, the undersigned need not fully evaluate the performance aspect of that test. See 466 U.S. at 697. Accordingly, the undersigned recommends that the motion to dismiss be granted

15

as to Mayes' claims that counsel provided inaccurate and incomplete advice and failed to accurately convey the government's plea offer.

Mayes further contends that Grimes provided ineffective assistance by failing to assist him in deciding whether to accept the government's plea offer. The undersigned cannot conclude that counsel's decision, in the context of his client's claims of innocence, to refrain from a vigorous attempt to change his client's mind was "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. Grimes repeatedly informed Mayes of the strength of the government's case and also informed him of the benefits of pleading guilty such as a reduction of sentence for acceptance of responsibility and the possibility of providing substantial assistance to the government. See Jones v. Murray, 947 F.2d 1106, 1110-11 (4th Cir. 1991) (finding that counsel was not professionally unreasonable by neither recommending that defendant accept the offered plea bargain nor attempting to persuade him to do so where defendant rejected a plea offer and continually claimed his innocence, and stating that "various [ABA] Standards place[ ] upon counsel an affirmative duty to avoid exerting 'undue influence on the accused's decision' and to 'ensure that the decision . . . is ultimately made by the defendant.'" (quoting Standards for Criminal Justice 4-5.1(b) & 14-3.2(b))); Purdy v. United States, 208 F.3d 41, 47-48 (2d Cir. 2000) (finding that even though counsel "never advised [his client] in so many words" about whether or not to plead guilty, he provided effective counsel because he advised his client on the factors necessary to allow the defendant to make an informed decision, such as the comparative sentence exposure, the strength of the government's case, and other benefits of pleading guilty); but see Boria v. Keane, 99 F.3d 492 (2d Cir. 1996) (holding that effective assistance of counsel includes counsel's

16

Case 7:07-cv-00132-JLK-mfu   Document 22   Filed 11/20/07   Page 16 of 19   Pageid#: 193

informed opinion as to what pleas should be entered). Similarly, Mayes' claim that counsel failed to make any effort to persuade Mayes to reconsider his decision to go to trial fails. Again, in light of Mayes' steadfast protestations of innocence, the undersigned finds that this decision reasonably fulfilled Grimes' obligation to advise Mayes while avoiding the danger of improper coercion. See United States v. Faubion, 19 F.3d 226, 229 (5th Cir. 1994) (noting the "originality of [the] claim" that counsel was ineffective for taking the case to trial instead of recommending that defendant plead guilty as charged and seek a reduction for acceptance of responsibility). Regardless, as the undersigned has already determined, Mayes fails to prove prejudice and, thus, his claims are not actionable.

In his post-hearing brief, Mayes does not address his claims that counsel failed to advise him that the government could reveal his criminal history to the jury in order to mar his credibility and that the government could seek an enhancement for obstruction of justice if he committed perjury while testifying. However, the undersigned notes that these allegations fail on the merits. Mayes' first claim fails as he does not even allege, much less prove, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). Mayes' second claims fails as, prior to his testimony, Mayes was administered an oath requiring him to tell the truth during his trial and simply failed to do so. See Robertson v. United States, 144 F. Supp. 2d 58 (D.R.I. 2001) (finding that defendant was not denied effective assistance of counsel as result of counsel's alleged failure to inform him that, if his testimony was found to be false, he could be assessed extra punishment for obstruction of justice, where the oath defendant took before testifying informed him of his obligation to testify truthfully);

17

Defusco v. United States, slip op., No. 05-157-T 2007, WL 2972576, at * 2 (D.R.I. Oct. 10, 2007) (finding no prejudice resulting from counsel's alleged failure to inform defendant that the court could take his false testimony into account in determining his sentence where defendant could not prove prejudice due to the weight of the evidence against him; the government's agreement not to prosecute him for perjury; and the prospect of receiving a sentence up to 175 years). Furthermore, Grimes testified at the evidentiary hearing that Mayes failed to inform him that his testimony differed substantially from Hamm's testimony. Mayes does not deny or dispute Grimes' recollection in his recent brief filed with the court and fails to support his conclusory contention included in his original filings that Grimes knew the testimony would be in direct conflict. Accordingly, Mayes is also not entitled to relief on these claims.

V.

Based on the foregoing, the undersigned finds that Mayes has failed to establish any credible evidence demonstrating that counsel's alleged errors resulted in constitutional prejudice to Mayes. Accordingly, the undersigned recommends that respondent's motion to dismiss be granted and that Mayes' motion for relief pursuant to 28 U.S.C. § 2255 be dismissed in its entirety.

The Clerk of the Court is directed immediately to transmit the record in this case to the Honorable Jackson L. Kiser, Senior United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to

28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is hereby directed to send a certified copy of this Report and Recommendation to petitioner and counsel of record.

**ENTER:** This 20th day of November, 2007

*/s/ signature/*
United States Magistrate Judge

19

Case 7:07-cv-00132-JLK-mfu   Document 22   Filed 11/20/07   Page 19 of 19   Pageid#: 196